UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, | Criminal No. 11-144 (DWF) |
| Plaintiff, | |
| v. | **AMENDED MEMORANDUM OPINION AND ORDER** |
| Travis Magdalena Scott, | |
| Defendant. | |

Keala C. Ede, Eric J. Riensche, Office of the Federal Defender, counsel for Defendant.

Timothy C. Rank, Assistant United States Attorney, United States Attorney's Office, counsel for the Government.

# INTRODUCTION

This matter is before the Court on Defendant Travis Magdalena Scott's ("Scott") motion for compassionate release in light of the COVID-19 pandemic.[1] (Doc. No. 71 ("Motion").) The United States of America (the "Government") opposes Scott's Motion.[2] (Doc. No. 79.) For the reasons discussed below, the Court respectfully denies Scott's Motion.

---

[1] Scott was appointed counsel on January 20, 2021. (Doc. Nos. 69, 70.) On February 3, 2021, Scott's counsel filed a supporting memorandum incorporating and expanding on the arguments in Scott's Motion. (Doc. No. 74 ("Def. Memo.").) For the purposes of citation, the Court references only the supporting memorandum.

[2] The Court also received and considered Scott's reply to the Government's opposition. (Doc. No. 81 ("Reply").)

## BACKGROUND

On May 31, 2011, Scott pled guilty to one count of Wire Fraud, in violation of 18 U.S.C. § 1343, and one count of Transactional Money Laundering, in violation of 18 U.S.C. § 1957, and 841(b)(1)(A).  (Doc. Nos. 33, 35.)  Scott was released on bond pending sentencing.  (Doc. Nos. 36, 37.)  On September 10, 2011, Scott faked his own death and disappeared.[3]  (Doc. No. 75 ("Def. Add.") at 30-54 ("PSR") ¶ 2); *see also* Doc. No. 59.)  On September 12, 2011, a warrant was issued for his arrest.  (*Id.*)  On December 22, 2011, Canadian law enforcement discovered and detained Scott in Winnipeg, Manitoba, Canada, in part for entering the country illegally.[4]  (*Id.*)  After serving his sentence in Canada, Scott was released to the custody of U.S. Marshals and transported to the Sherburne County Jail on or about October 28, 2013.  (PSR ¶ 59.)  On November 19, 2013, this Court sentenced him to 152 months' imprisonment to be followed by a 3-year term of supervised release.  (Doc. Nos. 62, 63.)

Scott is currently incarcerated at Englewood FCI in Littleton, CO with an anticipated release date of August 12, 2024.  Federal Bureau of Prisons, Inmate Locator, *https://www.bop.gov/inmateloc/* (last visited March 2, 2021).  Englewood FCI reports 3

---

[3]  After faking his death, Scott flew an unregistered plane to Canada.  (Doc. N0. 59 ¶¶ 8-11.)  He then assumed a fake identity and obtained a Canadian passport.  (*Id.* ¶¶13-16.)

[4]  Scott was charged under a fake name with Uttering a Forged Document, Possessing an Identity Document that relates to Another Person, Possession of a Weapon without being the registered owner and without authorization, and two counts of Possession of a Prohibited Weapon.  (PSR ¶ 59.)  On February 10, 2013, a Canadian court sentenced him to 30 months' imprisonment with credit for time served.  (*Id.*)

active COVID-19 cases among its inmates and 0 among its staff, 650 inmates and 70 staff who have recovered, and no inmate or staff deaths from the virus. Federal Bureau of Prisons, COVID-19: Coronavirus, *https://www.bop.gov/coronavirus/* (last visited March 2, 2021). To date, the Bureau of Prisons ("BOP") has performed 902 tests for COVID-19 at Englewood FCI with 649 of them positive for the virus, and 3 tests pending. *Id.*

Scott, who is 43 years old, now moves for compassionate release on the grounds that he is at increased risk of severe infection from COVID-19 because he suffers from obesity and hypertension.[5] (Def. Memo. at 1, 6-12, 20-27, 40; Reply at 1-3, 6; *see also* Def. Add. at 67-304 ("Medical Records") at 67, 69, 72, 117-19, 123, 130-31, 172, 174, 177, 221-23, 227, 234-35.) He also expresses concern about his increased risk of contracting COVID-19 in a prison setting without assurance of a timely vaccine.[6] (Def. Memo. 13-15; Reply at 3-12.) Scott argues further that the sentencing factors set forth in 18 U.S.C. § 3553(a) and consideration of community safety favor release.[7] (*Id.* at 2, 41-57; Reply at 12-15.)

---

[5]    Scott argues that because he has underlying conditions, his risk of hospitalization from COVID-19 is three times higher than people without underlying conditions, and that his risk of death is twelve times higher. (Def. Memo. at 11, 40.)

[6]    Scott asserts that his risk of contracting COVID-19 in Englewood FCI is thirteen times higher than in the community he wishes to be released. (Def. Memo. at 13.) The record reflects that he tested positive for the virus in December 2020. (*See* Def. Add. at 276, 291.) Scott asserts that while he already contracted COVID-19, he is at risk for severe reinfection and potential death. (Def. Memo. at 27-39; Reply at 3-7.)

[7]    Scott acknowledges the significance of the fraud he perpetrated and that he attempted to avoid punishment by faking his own death; however, he contends that his

3

## DISCUSSION

The First Step Act allows the Court to reduce a defendant's term of imprisonment if it finds that "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). Such "extraordinary and compelling reasons" include (1) medical conditions which diminish the ability of the defendant to provide self-care in prison and from which he or she is not expected to recover, (2) age-related deterioration, (3) family circumstances, and (4) other extraordinary and compelling reasons that exist either separately or in combination with the previously described categories. U.S.S.G. § 1B1.13 ("Sent'g Comm'n Pol'y Statement" or "Statement"), cmt. n.1(a)(ii).[8]

---

age, nonviolent criminal history, commitment to rehabilitation, and vulnerabilities for severe infection from COVID-19 all weigh in favor of release. (Def. Memo. at 41-53.)

He argues further that a well-calibrated release plan, including residing with his elderly mother, appropriate psychotherapy, and a period of home confinement accord with the public interest and the § 3553(a) factors. (Reply at 12-14.) Moreover, he contends that that the 87 months he has served in prison is a just punishment, particularly in light of the risk imposed by COVID-19 in a prison setting. (Def. Memo. at 53-56; Reply at 12-13.)

[8]  While the Statement refers only to motions filed by the Director of the BOP, the Court construes the statutory command pursuant to § 3582(c)(1)(A)(ii) that any sentence reduction be 'consistent with applicable policy statements issued by the Sentencing Commission' to mean that the Statement also applies to motions filed by defendants.

The Court acknowledges that there is ongoing litigation surrounding this issue and that other courts have found that the Statement does not apply to motions initiated by a defendant. *See McCoy*, 981 F.3d 271 at 281; *United States v. Brooker,* 976 F.3d 228 at 234 (2d Cir. 2020); *United States v. Jones,* 980 F.3d 1098 at 1110-11 (6th Cir. Nov. 20, 2020); *United States v. Gunn,* 980 F.3d 1178, 1180 (7th Cir. Nov. 20, 2020). The Court also notes that the Eighth Circuit has not yet considered the issue. Here, even if the Court were to exercise broader discretion, it would still find that Scott's circumstances do not meet the demanding standard for compassionate release.

4

If "extraordinary and compelling reasons" exist, a reduction of sentence is appropriate when "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)" and "the reduction is consistent with [the Sentencing Commission's] policy statement." Statement. The Court must also consider the sentencing factors set forth in 18 U.S.C. § 3553(a) "to the extent they are applicable." 18 U.S.C. § 3582(c)(1)(A). As the movant, the defendant bears the burden to establish that he or she is eligible for a sentence reduction. *United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016).

Notwithstanding, a defendant may move for a sentence reduction only after complying with an exhaustion requirement. 18 U.S.C. § 3582(c)(1)(A). Specifically, a defendant may move for a sentence reduction "[1] after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or [2] the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . . ."[9] *Id.*

The record reflects that Scott requested compassionate release from the warden at Englewood FCI on September 22, 2020 (Def. Add. at 1-27) and that it was denied on October 8, 2020 (*id.* at 28). Scott appealed the denial on October 16, 2020; however, he

---

[9] Although judicially created exhaustion requirements may sometimes be excused, no exception applies to a statutory command such as that presented in Section 3582(c)(1)(A). *See Ross v. Blake*, 136 S. Ct. 1850, 855-57 (2016) (rejecting judicially created "special circumstances" exception to the exhaustion requirement unambiguously stated in the Prison Litigation Reform Act of 1995).

did not receive a response. (*Id.* at 29.) Because more than 30 days have passed, the Court finds that Scott's Motion is properly before it.

After a careful review of Scott's Motion, supporting memorandum, and other documentation, including his Medical Records, the Court finds that his circumstances fail to meet the demanding standard for compassionate release.

The Court recognizes that Scott's obesity and hypertension are both conditions that increase his risk of severe illness from COVID-19. *See* Centers for Disease Control and Prevention, Coronavirus Disease: People with Certain Medical Conditions, *https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html* (last visited March 1, 2021). Nevertheless, the Court finds no indication that either condition, alone or in combination with the presence of COVID-19 at Englewood FCI, has diminished or will diminish his ability to provide self-care while in prison. While it is unfortunate that Scott contracted COVID-19 in December, the record reflects that he received appropriate medical care and appears to have largely recovered.[10] (Def. Add. at 275, 291.)

The Court does not downplay the increased risk of COVID-19 infection in a prison setting and recognizes Scott's concern that he will be reinfected.[11] It is truly

---

[10]     Englewood FCI was able to provide appropriate treatment even when Scott's oxygen saturation levels dropped as low as 89%. (*See* Def. Add. at 275, 280-1 (oxygen saturation levels during time of infection).) There is no indication the facility will be unable to do so again if Scott were to become reinfected with the virus.

[11]     The Centers for Disease and Prevention does not recognize prior COVID-19 infection as a risk factor for severe illness should a person contract the virus again. *See* Centers for Disease Control and Prevention, Coronavirus Disease: People with Certain

6

unfortunate that so many inmates at Englewood FCI contracted the virus.  Nevertheless, the Court declines to grant compassionate release based on Scott's fear of reinfection, particularly after having successfully recovered from the virus once already.  *See, e.g.*, *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) (a generalized fear of contracting COVID-19 is an insufficiently extraordinary and compelling reason to warrant release); *United States v. Eberhart*, 448 F. Supp. 3d 1086, 1090 (N.D. Cal. 2020) (same); *see also United States v. Garcia*, Cr. No. 16-333, 2020 WL 4018223, at *2 (D. Minn. July 16, 2020) (declining to grant compassionate release based on possibility of severe reinfection); *United States v. Gentle*, Cr. No.180279, 2020 WL 4018216, at *3 (D. Minn. July 16, 2020) (declining to grant compassionate release when COVID-19 infection did not diminish ability to provide self-care).

Currently there are just three active cases of COVID-19 at Englewood FCI. Federal Bureau of Prisons, COVID-19: Coronavirus, *https://www.bop.gov/coronavirus/* (last visited March 2, 2021).  Moreover, despite its high infection rate, Englewood FCI was able provide effective medical treatment such that all inmates who contracted the virus successfully recovered.  *Id.*  Englewood FCI also continues to employ measures to mitigate the spread of COVID-19.[12]

---

Medical Conditions, *https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html* (last visited March 2, 2021).

[12]    Effective March 13, 2020, the BOP required all of its facilities to implement a set of measures "to mitigate the spread of COVID-19" and "to ensure the continued effective operation of the federal prison system."  *See* Federal Bureau of Prisons, BOP COVID-19 Action Plan, *https://www.bop.gov/resources/news/20200313_covid-19.jsp* (last visited March 2, 2021).  Those steps include limiting visits and internal movement, increased

The Court also notes that the BOP has currently administered over 60,000 doses of the COVID-19 vaccine to all staff and inmates who wish to receive it.  Federal Bureau of Prisons, COVID-19: Coronavirus, *https://www.bop.gov/coronavirus/* (last visited March 1, 2021).  Sadly, until the vaccine is more widely available, some level of continued spread is inevitable.  In spite of the risk, the BOP must continue to carry out its charge to incarcerate sentenced criminals to protect the public and any release must be balanced against the danger it poses to society.

Here, the Court finds that even if Scott did present an extraordinary and compelling reason, release is not appropriate because the Court cannot conclude that a sentence reduction would reflect the seriousness of Scott's conviction, promote respect for the law, or provide a just punishment.  *See* 18 U.S.C. § 3553(a).  Moreover, given the nature and means of Scott's crime, and because of his demonstrated lack of respect for

---

hygiene measures, screening of both staff and inmates and virtual legal visits.  *See* Federal Bureau of Prisons, BOP Modified Operations, *https://www.bop.gov/coronavirus/covid19_status.jsp* (last visited March 2, 2021)The BOP periodically updates its Plan and is currently in Phase Nine.  Federal Bureau of Prisons, Coronavirus (COVID-19) Phase Nine Action Plan, *https://prisonology.com/wp-content/uploads/2020/08/COVID-19-Phase-9-COVID-Action-Plan.pdf* (last visited March 2, 2021).

The BOP is also exercising greater authority to designate inmates for home confinement.  Federal Bureau of Prisons, COVID-19: Coronavirus, *https://www.bop.gov/coronavirus/* (last visited March 1, 2021).  Since March 2020, the BOP has transferred more than 22,000 inmates to home confinement.  *Id.*

the law by attempting to fake his own death to avoid punishment, the Court cannot conclude that he poses no risk to the safety of the community.[13]  *See* Statement.

## CONCLUSION

For the reasons set forth above, the Court finds that Scott fails to present an extraordinary and compelling reason to warrant compassionate release.  The Court also finds that release is not appropriate because it cannot conclude that he poses no risk to the safety of the community and because a sentence reduction would not reflect the seriousness of his conviction, promote respect for the law, or provide a just punishment.

## ORDER

Based upon the foregoing, and on all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendant Travis Magdalena Scott's motion for compassionate release in light of the COVID-19 pandemic (Doc. No. [71]) is respectfully **DENIED**.

Date:  March 9, 2021                                         s/Donovan W. Frank
                                                                         DONOVAN W. FRANK
                                                                         United States District Judge

---

[13]    The Court recognizes Scott's strong beliefs that justice has been served by the time he has already spent in prison and that there are appropriate conditions of release which may be imposed that will curb any impulse or ability he has to inflict harm against the community.  The Court respectfully disagrees.